

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2006

# Johnson v. PA Bd Probation

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2239

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Johnson v. PA Bd Probation" (2006). *2006 Decisions.* Paper 1727.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1727

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2239

DETROY JOHNSON,

Appellant

v.

PENNSYLVANIA BOARD OF
PROBATION AND PAROLE;
DEPARTMENT OF CORRECTION;
THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-04632)
District Judge: Honorable James K. Gardner

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2006

Before: BARRY and AMBRO, Circuit Judges,
and DEBEVOISE,* District Judge

(Opinion filed  January 24, 2006)

---

* Honorable Dickinson R. Debevoise, Senior District Court Judge for the District
of New Jersey, sitting by designation.

---

OPINION

---

AMBRO, Circuit Judge

Detroy Johnson filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, arguing, *inter alia*, that the denial by the Pennsylvania Board of Probation and Parole (the "Board") of his application for parole violates the *ex post facto* clause of our Constitution. Johnson's appointed counsel on appeal, John S. Benson, filed an *Anders* motion to withdraw as counsel, asserting that all potential grounds for appeal are frivolous. We consider that motion here and, for the reasons set forth below, grant it and affirm the District Court's denial of Johnson's *habeas* petition.

**I.**

Under *Anders v. California*, 386 U.S. 738 (1967), if counsel "finds [a] case to be wholly frivolous, after a conscientious examination" of the potential grounds for appeal, s/he should "advise the court and request permission to withdraw." *Id*. at 744. This request must be accompanied by "a brief referring to anything in the record that might arguably support the appeal," *id*.,"explain[ing] to the court why the issues are frivolous," *United States v. Marvin*, 211 F.3d 778, 781 (3d Cir. 2000), and demonstrating that s/he has "thoroughly scoured the record in search of appealable issues," *id*. at 780. A copy of counsel's brief must be furnished to the appellant, who must be given time to raise

2

nonfrivolous arguments in a *pro se* brief. *Anders*, 386 U.S. at 744; Third Circuit LAR 109.2(a) (2000).

We "confine our scrutiny to those portions of the record identified by an adequate *Anders* brief . . . [and] those issues raised in Appellant's pro se brief." *United States v. Youla*, 241 F.3d 296, 301 (3d Cir. 2001). We do not "comb the record . . . for possible non-frivolous issues that both the lawyer and his client may have overlooked," as "[our] duty is merely to determine whether counsel is correct in believing those grounds [raised are] frivolous." *United States v. Wagner*, 103 F.3d 551, 552-53 (7th Cir. 1996). We grant counsel's *Anders* motion to withdraw if we believe "that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim," *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988), and if we conclude "that the appeal lacks any basis in law or fact," *id*. at 438 n.10.

## II.

As we write for the parties, only a brief summary of pertinent facts and procedural history is necessary. In June 1982, Johnson was convicted in the Philadelphia Common Pleas Court of two robberies and sentenced to seven years probation. While on parole, he pled guilty to third degree murder and conspiracy and was sentenced to serve a five to fifteen year term on the murder conviction and a five to ten year term on the conspiracy conviction. Because Johnson committed the murder and conspiracy while on probation for the 1982 robberies, the Common Pleas Court revoked his probation and sentenced him

3

to two to five year terms for each of his robbery convictions to be served concurrently with each other but consecutive to his murder sentence. Effective December 19, 1987, his consecutive robbery and murder sentences were aggregated to a seven to twenty year sentence.

When his minimum sentence expired in December 1994, the Board released Johnson on parole. However, six months later he was arrested and charged with a number of new crimes, including criminal trespass. On August 7, 1996, Johnson pled guilty to criminal trespass and received a sentence of nine to twenty-three months in county prison. The sentencing court paroled Johnson on that sentence on September 3, 1996.

As a result of his criminal trespass conviction, the Board charged Johnson with a violation of parole on his robbery and murder sentence. Subsequent to a revocation hearing, the Board revoked parole and re-committed Johnson effective the date that he had been paroled from his county sentence. Because Johnson had committed a new crime while on parole, the Board provided him no credit for time served on parole and calculated that he had thirteen more years to serve in prison from his effective date of re-commitment. Consequently, Johnson's sentence is set to expire on September 3, 2009. Since Johnson's re-commitment, the Board has reviewed Johnson for re-parole numerous times but has denied re-parole after each review. Reasons for those denials have included assaultive misconduct, supervision failures, need for counseling, refusal to submit a DNA

4

sample, refusal to accept responsibility for his crime and adverse recommendations from the Department of Corrections.

In July 2002, Johnson filed a *pro se* petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Pennsylvania, raising several arguments, including his *ex post facto* claim. Magistrate Judge Sandra Moore Wells entered a recommendation that Johnson's petition be denied for failure to demonstrate a substantial violation of any constitutional right. District Judge James Knoll Gardner entered an order adopting Judge Wells' recommendation and denying a certificate of appealability ("COA"). Johnson appealed and our Court issued a COA on the sole issue of whether the Board had denied Johnson's application for parole in violation of the *ex post facto* clause.

### III.

In his *habeas* petition, Johnson specifically alleges that, in assessing his eligibility for parole, the Board, by ignoring the Constitution's *ex post facto* clause, applied retroactively (and thus unconstitutionally) Pennsylvania's DNA Detection of Sexual and Violent Offenders Act, 44 Pa. C.S.A. §§ 2301-2336 ("DNA Act"), as well as the Department of Corrections (the "DOC") policy enforcing that Act, DOC Policy 11.6.1. The DNA Act requires that any person convicted of a felony (which includes murder and robbery) have a DNA sample drawn. 44 Pa. Const. Stat. Ann. §§ 2303, 2316(a). Persons serving prison sentences for one of these offenses on the effective date of the law – such

5

as Johnson – may not be released from prison until the sample has been drawn. *Id*. at §

2316(3). The samples are to be used "only for law enforcement identification purposes or

to assist in the recovery or identification of human remains from disasters or for other

humanitarian identification purposes." *Id*. at § 2318(c).

According to Johnson, he had a constitutional expectation that his parole petition

would be evaluated under the laws in effect when he was convicted. Because the DNA

Act was not in effect at the time of his conviction, he argues that his noncompliance with

the Act was not a valid basis on which to deny him re-parole. Our review of the record,

however, confirms that Johnson's *ex post facto* argument in this context is frivolous.

Under the *ex post facto* clause, "the government may not apply a law retroactively

that 'inflicts a greater punishment . . . than the law annexed to the crime . . . when

committed.'" *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1253 (3d Cir.

1996) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)). The threshold question

under the clause, therefore, is whether the DNA Act imposes "punishment." If it does

not, our inquiry with respect to that Act is at an end. *See id*. at 1253. Application of our

rationale in *Artway*— where we held that sex offender registration does not violate the *ex

post facto* clause—makes clear that collection of a DNA sample to be used for future

investigation and identification purposes cannot be punishment that implicates the clause.

*Id*. at 1264-67.

Indeed, Commonwealth courts have held expressly that "the [Pennsylvania DNA]

blood testing requirement is not penal and therefore cannot offend the ex post facto

clause." *Dial v. Vaughn*, 733 A.2d 1, 4-5 (Pa. Commw. Ct. 1999). In *Dial*, the Court

observed:

> The requirement that [the prisoner] submit to pre-release withdrawal of a
> blood sample for DNA testing does not alter his maximum sentence. Nor
> does the Act alter [the prisoner's] parole eligibility date. Once eligibility
> has been achieved by incarceration for the prescribed minimum time, actual
> release on parole may depend on full compliance with a variety of prison
> rules and administrative requirements. The Act defines an administrative
> requirement that must be satisfied prior to release. This requirement is
> similar to the requirement for acquisition and storage of other convict
> identification records in the form of photos, fingerprints and physical
> description compiled at the time of arrest.

733 A.2d at 4.

We agree with the Commonwealth and several of our sister circuits that the

collection of blood for identification and establishment of a DNA data bank is, like

fingerprinting and photographing, a non-penal, administrative requirement that does not

run afoul of the *ex post facto* clause. *See, e.g.*, *Gilbert v. Peters*, 55 F.3d 237, 239 (7th

Cir. 1995) (stating that "[b]oth federal and state courts have uniformly concluded that

statutes which authorize collection of blood specimens to assist in law enforcement are

not penal in nature"). Nor do we believe that denial of parole for refusal to comply with

the Act's sample collection requirements is *ex post facto*. This is because whatever

disadvantage is imposed (denial of parole) from an inmate's refusal to comply with the

DNA Act results "not by reason of conduct that took place *before* enactment of the

statute, so as to become retrospective, but from conduct that occurred *after* enactment in

7

refusing to comply with a reasonable regulation." *Jones v. Murray*, 962 F.2d 302, 309 n.3 (4th Cir. 1992) (holding that retention of inmates who refused to provide blood for a DNA sample was not an *ex post facto* law since that retention did not exceed the terms of the prisoners' initial sentences) (italics in original).

\* \* \* \* \*

For the reasons provided above, we affirm the decision of the District Court denying Johnson's petition for *habeas corpus* and grant counsel's motion to withdraw.